**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CALVIN DWIGHT WARE,

        Petitioner,

v.                                       Case No. 06-CV-11165

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY
AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

Petitioner Calvin Dwight Ware a state prisoner currently confined at the

Muskegon Correctional Facility in Muskegon, Michigan,[1] has filed a *pro se* petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-

degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the

commission of a felony, Mich. Comp. Laws § 750.227b, following a joint jury trial with

co-defendant Thomas Louis Reese in the Wayne County Circuit Court in 2003. He was

sentenced to consecutive terms of life imprisonment without the possibility of parole and

two years imprisonment on those convictions in 2004.

In his pleadings, Petitioner raises claims concerning the great weight of the

evidence, prosecutorial misconduct, judicial bias, the admission of rebuttal testimony

---

[1]At the time he instituted this action, Petitioner was confined at the Gus Harrison
Correctional Facility in Adrian, Michigan, where Respondent was the warden.

and ineffective assistance of counsel for failing to object to that testimony.  For the reasons set forth below, the court denies the petition for a writ of habeas corpus.  The court also denies a certificate of appealability and denies Petitioner leave to proceed on appeal *in forma pauperis.*

## II.  BACKGROUND

Petitioner's convictions arise from the shooting death of Derrick Golden at approximately 1:30 a.m. on December 21, 2002 outside the Apex Bar in Detroit, Michigan.  The prosecution's theory of the case was that co-defendant Reese operated a drug ring, that Petitioner was his enforcer, and that the murder was a drug hit. Petitioner presented an alibi defense and claimed that another man committed the shooting.

At trial, Stephanie Sanders testified that she had known Thomas Reese for nine or ten years, had frequented his drug house on the corner of Melrose and Clay streets, and had traded sexual favors with him for drugs and money.  She also testified that she had known Petitioner for two or three years and that he was the enforcer for Reese's drug business.  Sanders said that she had previously witnessed Petitioner assault people who were short on drug money owed to Reese.  She also testified that she knew a man named Leroy Rankins who was killed on August 18, 2002.  Sanders stated that she overheard Reese and Petitioner talking in the living room of Reese's house about how Rankins had "messed up" Reese's money for the last time and that Reese told Petitioner, "Man, beat him to death."  When confronted with documents showing that she was not paroled from state custody until August 22, 2002, Sanders claimed that she was released from prison early but could not find the supporting documentation.

As to the Golden shooting, Sanders testified that she was making a beer run on

December 21, 2002 when she saw Derrick Golden talking to a woman named Vera Johnson, who sold drugs for Reese, near the Apex Bar on Oakland and Smith streets. Golden asked Sanders to get him some rolling papers from the store. When she returned, Sanders overheard Johnson asking Golden for money to give to Reese and heard Golden refusing to give it to her. When Sanders was across the street from Golden, she saw Reese and Tamaris Eldridge arrive in Reese's red truck. Reese got out, grabbed Johnson, threatened her about her dealings with Golden and told Eldridge to get Petitioner. Eldridge did so and Petitioner came to the bar in his own car following Eldridge. Petitioner got out of the car armed with a pistol, approached Golden, and said, "Man, I know you're not fucking with my people's shit." Golden responded, "Man, you know me better than that." Sanders saw Petitioner put his arm around Golden and heard two shots a few seconds later. Sanders also heard Reese tell Petitioner to "get the hell out of here" before the men fled the scene in their vehicles.

Sanders left the scene and did not wait to speak to police because she was scared. When police subsequently found her at a homeless warming center, she refused to speak to them because she did not want to get involved. Sanders acknowledged that she was on parole at the time of the shooting. She eventually gave police two statements in January 2003. After she did so, the police gave her a place to stay and money for rent and food.

Latina Whatley testified that Thomas Reese was her aunt's boyfriend and a drug dealer. She said that she first met Petitioner in 1998 when Reese introduced him to her as "his right-hand man." Joyce Whatley testified that Thomas Reese was her sister's boyfriend and a drug house operator, and that Petitioner worked for Reese.

Medical testimony established that Derrick Golden died from multiple gunshot

wounds, a contact wound to the head and two wounds to the abdomen with no evidence of close range firing. Police testimony established that three spent nine millimeter bullet casings, which had been fired from the same weapon, were found near the body on the sidewalk. No murder weapon was recovered and fingerprint analysis of the casings was negative.

Petitioner called four witnesses in his defense. Ruth Schueller, a Michigan Department of Corrections records analyst, presented a document showing that Stephanie Sanders was incarcerated at Camp Brighton on August 18, 2002 and was paroled on August 22, 2002. Since that release date, Sanders had been sent to a Technical Rule Violations Center on October 3, 2002 and November 14, 2003.

Gerald Borycz, a private investigator, testified that he went to the crime scene with an assistant to take photographs and measurements at a time similar to when the shooting occurred. When he was standing eight feet north of the corner of Oakland and Smith streets, he could not see his assistant standing near the public telephone where Golden was shot, despite the flood lights that lit the area near the bar.

Michael Stinson testified that he witnessed the incident from his van parked in front of a church across the street from the Apex Bar. He saw Derrick Golden walk toward the public telephone and saw a man he described as dark complected, six feet tall, and weighing more than 200 pounds approach Golden. Stinson had never seen the man before, and the man was not Petitioner, whom Stinson knew from the neighborhood. Stinson then heard shots, saw the man walk back the way he came and flee the area in a truck without lights. Stinson ran to Golden and saw that he had been shot. Stinson then ran into the bar for help and ran to notify Golden's father. When he returned to the bar, he gave the police his name but said that he did not have anything

4

to say at that time.  He denied telling the police that he had been at his house when he heard shots, drove to the bar, and found Golden lying on the sidewalk.

Lakeisha Smith testified that she lived with Petitioner and several children in a home on Allendale street.  She testified that Petitioner was at home watching the children while she wrapped Christmas presents on the night of the shooting.  She claimed that Petitioner only left the house for 15 minutes when he went to a gas station to buy soft drinks with her 12-year-old daughter around 10:00 p.m.  She and Petitioner went to bed at 1:15 a.m. and he did not get up during the night.

Co-defendant Reese called Marvelous Persell, the owner of the Apex Bar. Persell testified that she saw Derrick Golden standing near the public telephone outside the bar on the night of the shooting and that he accompanied her to a bar across the street for a period of time that evening.  Around 1:30 a.m., after she had returned to the Apex Bar, Michael Stinson ran into the bar and said that Golden was dead.  She saw Golden lying on the sidewalk and called the police.  Persell said that she had lived in the neighborhood for many years and was familiar with street locals.  She did not recognize Sanders when shown a photograph and did not know co-defendant Reese.

In rebuttal, Police Officer Robert Crisp testified that he spoke to Michael Stinson when securing the crime scene.  At that time, Stinson said that he was at home when he heard three gunshots and went to see what had happened.  Stinson did not say that he had witnessed the shooting nor did he give a description of the perpetrator.  Crisp admitted that Stinson did not give a formal statement.

At the close of trial, the jury found Petitioner guilty of first-degree murder and possession of a firearm during the commission of a felony.  The trial court subsequently sentenced him to life imprisonment without the possibility of parole on the murder

conviction and a consecutive term of two years imprisonment on the felony firearm conviction.[2]

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the same claims contained in his habeas petition. The Michigan Court of Appeals affirmed his convictions and sentence. *See People v. Ware*, No. 253441, 2005 WL 1249292 (Mich. Ct. App. May 26, 2005) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Ware*, 474 Mich. 946, 706 N.W.2d 201 (2005).

Petitioner thereafter submitted his federal habeas petition, asserting the following claims as grounds for relief:

I.    His convictions are contrary to the great weight of the evidence.

II.   The prosecutor engaged in reversible misconduct during rebuttal argument when she made many inappropriate remarks that were not responsive to defense arguments and the trial court abused its discretion in declining to order a mistrial.

III.  The trial court pierced the veil of impartiality, usurped the role of the prosecutor, and denied him a fair trial.

IV.   Robert Crisp's rebuttal testimony was reversible error because it was not in response to evidence introduced by Petitioner in his case-in-chief but was in response to denials elicited during Michael Stinson's cross-examination to facilitate the admission of new evidence and defense counsel was ineffective for failing to object.

Respondent has filed an answer to the petition asserting that it should be denied because the claims are not cognizable, barred by procedural default, and/or lack merit.

---

[2]The jury also found co-defendant Reese guilty of conspiracy to commit first-degree murder and the trial court sentenced him to life imprisonment.

### III.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner

filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521

U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (1)      resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. §2254(d) (1996).

 "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to

'grant the writ if the state court identifies the correct governing legal principle from [the

Supreme] Court but unreasonably applies that principle to the facts' of petitioner's

case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413);

*see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  DISCUSSION

### A.  Great Weight of the Evidence Claim

Petitioner asserts that he is entitled to habeas relief because the verdict was against the great weight of the evidence.  Respondent contends that this claim is not

cognizable upon federal habeas review.

A federal habeas court has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2003).

The Michigan Court of Appeals resolved Petitioner's great weight of the evidence claim under state law and did not address the issue as a matter of federal law. *See Ware*, 2005 WL 1249292 at *1-3. Accordingly, this court must conduct an independent review of the state court's decision. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* This independent review "is not a full, *de novo* review, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This court must view this standard through the

framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See People v. Kelly*, 588 N.W.2d 480 (1998); Mich. Comp. Laws § 750.316. Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486 N.W.2d 312 (1992). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 233 N.W.2d 617 (1975). The elements of felony firearm are possession of a firearm during the commission or attempted commission of a felony. *See People v. Akins*, 675 N.W.2d 863, 873 (2003) (quoting *People v. Avant*, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

The evidence at trial, particularly the testimony of Stephanie Sanders identifying Petitioner as the shooter and the testimony of Joyce and Latina Whatley indicating that Petitioner was an enforcer for co-defendant Reese, provided sufficient evidence to support Petitioner's convictions. Petitioner's claim essentially challenges credibility of

the testimony and the inferences the jury drew from the evidence presented. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, a rational trier of fact could have found the elements of first-degree murder and felony firearm beyond a reasonable doubt. Habeas relief is not warranted on this claim.

## B. Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct during rebuttal arguments by arguing facts not in evidence, injecting the prestige of the prosecutor's office, shifting the burden of proof, denigrating defense counsel and the defense and making an improper civic duty argument. Respondent contends that these claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due

process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused, (2) whether the statements were isolated or among a series of improper statements, (3) whether the statements were deliberately or accidentally before the jury and (4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The Michigan Court of Appeals denied relief on Petitioner's prosecutorial misconduct claims, stating:

> Ware alleges several instances of prosecutorial misconduct. A prosecutor has "great latitude" in making his arguments and statements at trial. *People v. Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). A prosecutor may draw inferences from the evidence, but may not argue facts not in evidence or mischaracterize the evidence. *Id.*; *People v. Goodin*, 257 Mich App 425, 532-433; 668 NW2d 392 (2003); *People v. Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).
>
> After a careful review of the record, we conclude that Ware's arguments lack merit, and were we to hold otherwise, any prejudice could have been cured by a cautionary instruction to the jury that the prosecutor's comments should be disregarded. *People v. Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

*Ware*, 2005 WL 1249292 at *3 (footnote omitted). Having reviewed the matter, the

court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

Petitioner first claims that the prosecutor argued facts not in evidence by stating that Reese had Leroy Rankins killed for $200.00 and by commenting that she was not allowed to fully question witnesses about that murder. (*See* Trial Tr., Vol. V, pp. 11-13.) It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). While there was no evidence presented as to the amount of money Rankins was short, Sanders testified that she heard Petitioner and co-defendant Reese talking about how Rankins had messed up Reese's drug money for the last time and that Reese told Petitioner to beat him to death. A prosecutor, however, has leeway to argue reasonable inferences from the evidence. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Even assuming that the prosecutor's remarks were improper, however, Petitioner has not shown that they were sufficiently flagrant. Although deliberate, such remarks were brief and made in response to defense arguments, concerned a different incident, and were not intended to mislead the jury about the events of the shooting. Petitioner has failed to establish that the prosecutor's comments rendered his trial fundamentally unfair.

Petitioner next contends that the prosecutor invoked the prestige of the prosecutor's office and vouched for Stephanie Sanders' credibility. (*See* Trial Tr., Vol. V, pp. 14-15.) It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs as to a defendant's guilt or a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634

(6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18, 2003 WL 152314, *7 (6th Cir. 2003) (citations omitted).

While the prosecutor commented on Sanders' credibility, the prosecutor did so in response to defense challenges to her credibility and, as a whole, referenced the evidence presented at trial. Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See, e.g, Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not impermissibly argue that the government had information indicative of guilt which was not presented to the jury. Moreover, the challenged remark was isolated in nature and was not intended to mislead the jury as to the circumstances of the crime.

Petitioner also contends that the prosecutor improperly shifted the burden of proof to the defense by arguing that the defense did not present impeaching or contradictory evidence. (*See* Trial Tr., Vol, V, p. 19.) While it is improper for the prosecution to impliedly shift the burden of proof to a defendant, *see United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), a prosecutor may argue from the facts that a witness is or is not worthy of belief, *see Portuondo*, 529 U.S. at 69, and may argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. In this case, the prosecutor's comments were an effort to rehabilitate Sanders' credibility, which had been attacked by the defense during closing arguments. The prosecutor's comment,

14

when read in context, tended to focus on the evidence and testimony and was a permissible attack on the defense theory. The prosecutor did not improperly shift the burden of proof to the defense. Furthermore, Petitioner cannot establish that he was prejudiced by the prosecutor's comments given that the trial court instructed the jury on the burden of proof during trial. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Petitioner also asserts that the prosecutor denigrated defense counsel and the defense by stating that the defendants could afford lawyers but were "not up on the latest technology." (*See* Trial Tr., Vol. V, pp. 20-21.) It is clearly inappropriate for a prosecutor to make personal attacks on opposing counsel. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). In this case, the prosecutor's comments were made in response to defense arguments and concerned the evidence presented by the defense investigator. The prosecutor did not denigrate defense counsel personally nor attack counsel's integrity. Rather, the prosecutor's comment was an effort to criticize the defense theory and evidence. Nonetheless, to the extent that the comment was improper, it was not persistent nor flagrant and the trial court minimized any possible prejudice to Petitioner by directing the prosecutor to "lay off that" and proceed with her argument.

Lastly, Petitioner claims that the prosecutor made an improper civic duty argument by stating that Stephanie Sanders did her duty by testifying against the defendants and saying, "You know what they did. Don't put them out on the street to do it to somebody else." (Trial Tr., Vol. V, p. 24.) Generally, a prosecutor cannot make statements "calculated to incite the passions and prejudices of the jurors." *United*

States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991). Even assuming that the prosecutor's remark rose to the level of an improper civic duty argument, any prejudice was cured when the trial court sustained the defense objection to the comments. See Puertas v. Overton, 168 Fed. Appx. 689, 701-02 (6th Cir. 2006) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). Further, the trial court's instruction to the jurors that they must not consider what will happen if they convict or acquit the defendants and must make a decision based on the facts and evidence, (see Trial Tr. Vol. V, p. 27), defeats Petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. See Cameron v. Pitcher, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001). As noted, jurors are presumed to follow the court's instructions. See Powell, 469 U.S. at 66.

Moreover, to the extent that any comments by the prosecutor could be seen as improper, they were not so flagrant as to deprive Petitioner of a fair trial. The disputed remarks, although deliberate, were relatively isolated in nature and generally made in response to defense arguments. Potential prejudice to Petitioner was alleviated by the trial court's instructions, which stated that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, and that the prosecution had the burden of proving guilt beyond a reasonable doubt. See, e.g., Russ v. Stegall, 2000 WL 791753, *4 (E.D. Mich. June 8, 2000). The prosecution presented eyewitness testimony to establish Petitioner's guilt. Petitioner has failed to establish that he was denied a fundamentally fair trial by the prosecutor's closing arguments. Habeas relief is not warranted on these claims.

## C. Judicial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court

pierced the veil of judicial impartiality and was biased against him at trial. Respondent contends that the preserved judicial misconduct claim lacks merit and that any other such claims are barred by procedural default.

Petitioner first claims that the trial court exhibited bias against him by stating that Stephanie Sanders was released early. The following discussion occurred during the trial:

> Q: You would agree that a date of parole is when you're released from prison early, was my question?
>
> THE COURT: Mr. Cripps, I think you're arguing now. You have a document. You showed her with a date on it. She said she was released early. We can stay until next week and the question is going to be asked the same and it's going to be answered the same. She's already stated that to you.
>
> MR. CRIPPS: Right.
>
> THE COURT: The jury observed that.
>
> MR. CRIPPS: Thank you, your Honor.
>
> THE COURT: Now, if you wish to go any further with that, it would have to be done through some other witness. You're arguing with her. She's given you the testimony now. And it's quite clear she was released early.
>
> MR. CRIPPS: No -
>
> THE COURT: The jury can accept it -
>
> MR. CRIPPS: Judge, Judge, I object to you making that statement -
>
> THE COURT: Well, I object Mr. Cripps, to your questioning the Court's ruling. Now, I've already told you the witness has answered your question and you will move on. You cannot argue with the Court. You cannot do that. The only person that can overrule this Court is another Court. You can't do it. Now I'm ordering you to proceed. Ask another question. Okay? Do you understand me?
>
> MR. CRIPPS: Yes, I do, Judge.

THE COURT: Thank you.  Go ahead.  Proceed.

MR. CRIPPS: All right.

BY MR. CRIPPS:

Q: So you agree that if the parole document shows you -

THE COURT: The Court has already ruled that the witness has said that she was release early and that the document that you have is not accurate.  Now the jury can believe or not believe, but you have explored that.  You've gone into it.  You cannot continue to ask the same question. That's over with.  Okay? Now proceed.  You've made your point.  Thank you.

(Trial Tr., Vol. I., pp. 168-69.)

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case.  *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases.  One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties.  *See In re Murchison*, 349 U.S. 133, 136 (1955).  The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which strongly suggests to the jury that the judge disbelieves the defendant's case or otherwise favors the prosecution.  *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).  To violate a defendant's right to a fair trial, a trial judge's intervention in the trial must be significant and must be adverse to the defendant to a substantial degree.  *See McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *see also Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (state trial judge's behavior must render the trial

fundamentally unfair to warrant habeas relief).

The Michigan Court of Appeals denied relief on this claim, stating in relevant part as follows:

> A trial court has broad, but not unlimited, discretion and power in the matter of trial conduct. *People v. Taylor*, 252 Mich App 519; 652 NW2d 526 (2002); *People v. Hartsuff*, 213 Mich App 338, 349; 539 NW2d 781 (1995). Portions of the record should not be taken out of context, and the record must be reviewed as a whole. *People v. Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995); *People v. Collier*, 168 Mich App 687, 697-698; 425 NW2d 118 (1988). In a criminal trial, the defendant is entitled to a neutral and detached magistrate of justice. *People v. Conyers*, 194 Mich App 395, 398; 487 NW2d 787 (1992). Actions of the court in matters of trial conduct must not pierce the veil of judicial impartiality. *People v. Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). A trial court's conduct pierces the veil of judicial impartiality where it unduly influences the jury by its comments or conduct and thereby deprives the defendant of a fair and impartial trial. *Paquette*, supra at 340.

> Our review of the record leads us to conclude that the trial court did not interfere with the integrity or fairness of the trial.

*Ware*, 2005 WL 1249292 at *3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. In general, the trial court's comments on defense counsel's questions were meant to facilitate the trial and prevent duplicative questioning of the witness. As stated by the Supreme Court, "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Liteky*, 510 U.S. at 556. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish "bias or partiality." *Id.* at 555-56.

While the trial judge misspoke by stating, "it's quite clear that she was released

early," the record as a whole indicates that the judge was informing defense counsel that his questions regarding Sanders' parole release date had been asked and answered and that the matter was a question of fact for the jury. More importantly, the trial judge subsequently instructed the jurors that he did not mean to say "obviously she was released early," that he was not making any determinations as to witness credibility, and that the jury would decide such matters. (*See* Trial Tr., Vol. I, pp. 172-73.) Given such circumstances, Petitioner has not shown that the trial court acted improperly and/or that he was prejudiced by the court's actions. Habeas relief is not warranted on this judicial misconduct claim.

Petitioner also raises additional instances of perceived judicial bias, which Respondent contends are barred by procedural default. Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this

determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion on this issue. In denying relief on these claims, the court relied upon Petitioner's failure to object at trial. *See Ware*, 2005 WL 1249292 at *3, n. 7. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 597 N.W.2d 130 (1999); *People v. Stanaway*, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon a procedural default – Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of

prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).[3]

Petitioner has also failed to establish that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  His additional judicial misconduct claims are thus barred by procedural default and do not warrant habeas relief.

### D.  Rebuttal Testimony and Ineffective Assistance of Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting the rebuttal testimony of Detroit Police Officer Robert Crisp.  Petitioner relatedly asserts that defense counsel was ineffective for failing to object to the admission of this testimony.  Respondent contends that the evidentiary claim is a state law issue not cognizable upon federal habeas review but fails to address the ineffective assistance of counsel claim.

---

[3]Nonetheless, the court's review of the record reveals that the trial judge's comments, while sometimes brusque, were ordinary efforts at courtroom administration and did not reflect unfair bias against Petitioner or in favor of the prosecution.  *See Liteky*, 510 U.S. at 555-56.

It is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *See Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

The Michigan Court of Appeals found that Officer Crisp's rebuttal testimony was properly admitted in rebuttal because it contradicted a Michael Stinson's testimony that he saw the murder and that someone other than Petitioner shot Derrick Golden, and because it countered testimony presented in Petitioner's case. *See Ware*, 2005 WL 1249292 at *3. This court agrees that Officer Crisp's rebuttal testimony was properly admitted as a matter of state law and further finds that the testimony did not render Petitioner's trial fundamentally unfair. Petitioner has not established that the Michigan Court of Appeals' decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application of federal law.

Petitioner is also not entitled to habeas relief on his claim that trial counsel was ineffective for failing to object to the admission of Officer Crisp's rebuttal testimony. The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's

deficient performance prejudiced the defense.  *Id.* at 687.

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

The Michigan Court of Appeals denied relief on this claim, finding that defense counsel was not ineffective for failing to make a meritless objection.  *See Ware*, 2005 WL 1249292 at *3, n. 10.  This decision is neither contrary to *Strickland* nor an unreasonable application thereof.  Given this court's determination that the foregoing claim lacks merit, Petitioner cannot establish that defense counsel erred or that he was prejudiced by counsel's conduct.  Habeas relief is not warranted on this issue.

### E.  Denial of Certificate of Appealability, Leave to Proceed on Appeal *In Forma Pauperis*

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination.  *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to dismiss the

habeas petition, the court has studied the record and relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *Id.* at 901 (quoting *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *rev'd in part on other grounds*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition ... will have an intimate knowledge of both the record and the relevant law,' "the district judge is, at that point, often best able to determine whether to issue the COA).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. The court will therefore deny a certificate of appealability.

Lastly, the court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal of the court's decision would be frivolous. *See* Fed. R. App. P. 24(a). Accordingly, the court will also deny leave to proceed on appeal *in forma pauperis*.

## V. CONCLUSION

IT IS ORDERED that the Petition for a Writ of Habeas Corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability and leave to

proceed on appeal *in forma pauperis* is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 30, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522